IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CLEAR DEFENSE, L.L.C.          )
                              )
            Plaintiff,        )
                              )
       v.                     )    1:17-cv-01139
                              )
CLEARDEFENSE PEST CONTROL OF  )
GREENSBORO, LLC, CLEARDEFENSE )
PEST CONTROL OF CHARLOTTE, LLC, )
and CLEARDEFENSE PEST CONTROL )
OF RALEIGH, LLC,              )
                              )
            Defendants.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Clear Defense, L.L.C. brings suit for statutory and common law trademark infringement, common law unfair competition, and unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 ("UDTPA"), against Defendants ClearDefense Pest Control of Greensboro, LLC, ClearDefense Pest Control of Charlotte, LLC, and ClearDefense Pest Control of Raleigh, LLC. (Doc. 13.)  Before the court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 16.)  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    BACKGROUND

The allegations of the amended complaint and the contents of documents the court may properly consider at this stage of the

proceedings,[1] all of which are accepted as true and viewed in the

---

[1] Plaintiff attaches one exhibit to its amended complaint and another to its response brief. Defendants attach twenty-four exhibits to their opening brief. Although matters outside the pleadings may generally not be considered on a Rule 12(b)(6) motion to dismiss without converting it to a Rule 56 motion for summary judgment, see Fed. R. Civ. P. 12(d), "the court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting a motion to dismiss into one for summary judgment." Plymouth Cty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013) (citation and internal quotation marks omitted); see also Fed. R. Evid. 201. The court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Although Plaintiff disputes the legal weight of some of Defendants' exhibits (see Doc. 18 at 10–11 (arguing that "[t]he Court should refrain from taking judicial notice of [certain exhibits] for the purpose proposed by Defendants" of "conclusively evidenc[ing]" the weakness of Plaintiffs' mark, since the exhibits comprise at most "prima facie" evidence thereof, id. at 11 n.3)), Plaintiff does not dispute the veracity of the contents of these exhibits or argue against their consideration for other purposes. Because all of Defendants' exhibits other than Exhibit 9 and Exhibit 11 are public records (primarily, U.S. Patent and Trademark Office ("USPTO") records), the court judicially notices them for the fact that such filings were made. See, e.g., Music Makers Holdings, LLC v. Sarro, No. 09cv1836, 2010 WL 2807805, at *2 n.1 (D. Md. July 15, 2010). While it is unclear whether or not Exhibit 9 is a public record, given that it is described on CM/ECF as a "[s]pecimen from [Plaintiff's] trademark application" but consists only of images with no evidence that such images are part of a USPTO filing, the court has no need to consider this exhibit as its contents are entirely duplicative of the contents of Exhibit 3. Compare (Doc. 17–9) with (Doc. 17–3 at 7–9). Exhibit 11, meanwhile, is a series of screenshots of a Yelp webpage. (Doc. 17–11.) Because Plaintiff relies on this webpage in its amended complaint as evidence of consumer confusion (Doc. 13 ¶¶ 29, 41) and Plaintiff does not "dispute . . . the document's authenticity," Goines, 822 F.3d at 166, the court will consider Exhibit 11 for purposes of resolving the motion to dismiss. Plaintiff's exhibits may similarly be considered because they are either attached to the amended complaint (Doc. 13–1) or a public (USPTO) record (Doc. 18–1) that the court notices for the same purpose as it notices Defendants' USPTO exhibits. As to any document subject to judicial notice, the court notices its contents but not the truth or falsity thereof if the matter is disputed. See United States v. Townsend, 886 F.3d 441, 444 (4th Cir. 2018) ("We may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is relevant and critical to the matter . . . ." (internal quotation marks omitted)).

light most favorable to Plaintiff for purposes of the present motion, show the following:

Plaintiff is a Greensboro-based company that produces "clear films and laminates applied to glass" for the purposes of "security, insulation, and protection." (Doc. 13 ¶¶ 2, 9.) Plaintiff alleges that its customers include residential, commercial, educational, sporting, and military entities. (Id. ¶ 16.) It is also the assignee of the trademark "CLEARDEFENSE," U.S. Trademark Registration No. 1656820,[2] registered September 10, 1991, which it has been "using since at least the 2000s." (Id. ¶¶ 10, 12; Doc. 17-2.) Plaintiff presents this mark, styled "ClearDefense," on its product packaging and company vehicles. (Doc. 13 ¶ 21.)

Defendants are pest control companies located in Raleigh, Charlotte, and Greensboro, and organized in 2013, 2014, and 2017, respectively. (Id. ¶¶ 25, 38.) Defendant ClearDefense Pest Control of Raleigh, LLC owns a trademark for a composite design including the words "CLEARDEFENSE PEST CONTROL," U.S. Trademark Registration No. 4636639, which was registered on November 11, 2014. (Id. ¶ 34; Doc. 17-1.) Defendant ClearDefense Pest Control of Charlotte, LLC has applied for a trademark for the phrase "Clear Defense Pest Control," U.S. Trademark Application No. 87446449,

---

[2] This registration lapsed beginning December 16, 2014. (Doc. 17-2.)

filed on May 11, 2017.  (Doc. 13 ¶ 36; Doc. 17-6.)  Defendants use these or similar marks on advertising, webpages, and company vehicles, with the marks variously styled as "CLEARDEFENSE PEST CONTROL," "CLEARDEFENSE Pest Control," "Clear Defense Pest Control," "CLEARDEFENSE PEST," and "Clear Defense."  (Doc. 13 ¶¶ 28, 30; Doc. 13-1.)  According to Plaintiff, a "managing member of Defendants" acknowledged the problem of the parties' similar marks and assured Plaintiff that Defendants "would change their mark(s)."  (Doc. 13 ¶ 50.)  However, Defendants continue to use the marks.  (Id.)

Plaintiff brought this action on December 22, 2017.  (Doc. 1.)  The amended complaint asserts causes of action under the Lanham Act, 15 U.S.C. § 1125, the North Carolina common law of trademark infringement and unfair competition, and the UDTPA, N.C. Gen. Stat. § 71-1.1.  (Doc. 13 ¶¶ 63-92.)  Defendants filed the instant motion to dismiss on March 22, 2018, contending that the complaint fails to plausibly allege a likelihood of confusion (as to Counts One through Four) and seeking dismissal of Counts Five (seeking an accounting) and Six (seeking cancellation of registration) for failure to state free-standing claims.  (Docs. 16, 17.)  The motion is fully briefed (Docs. 17, 18, 19) and is ready for decision.

## II.  ANALYSIS

Federal Rule of Civil Procedure 8(a)(2) provides that a

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

## A. Applicable Legal Standard for Trademark Infringement, Unfair Competition, and UDTPA Claims

To prove trademark infringement under Section 43(a) of the Lanham Act, a plaintiff must show the following:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

<u>People for the Ethical Treatment of Animals v. Doughney</u>, 263 F.3d 359, 364 (4th Cir. 2001) (first quoting 15 U.S.C. §§ 1114, 1125(a); then citing <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.,</u>

_Inc._, 43 F.3d 922, 930 (4th Cir. 1995)).  In their briefing in support of their motion to dismiss, Defendants contest only the fifth factor: likelihood of consumer confusion.  (Doc. 17 at 21–22.)

Courts have applied essentially the same likelihood of confusion standard to claims of common law trademark infringement or unfair competition (as regarding trademarks) under North Carolina law.  _See_ _Ga. Pac. Consumer Prods., LP v. Von Drehle Corp._, 618 F.3d 441, 449 (4th Cir. 2010) ("[T]he parties do not dispute that, under the facts of this case . . . the tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved."); _Polo Fashions, Inc. v. Craftex, Inc._, 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); _Charcoal Steak House of Charlotte, Inc. v. Staley_, 139 S.E.2d 185, 203 (N.C. 1964) ("Unfair competition is the child of confusion." (internal quotation marks omitted)); _Blackwell's Durham Tobacco Co. v. Am. Tobacco Co._, 59 S.E. 123, 126 (N.C. 1907) ("[A]n injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion, and to enable the latter corporation to

obtain, by reason of the similarity of names, the business of the prior one." (quoting Chas. S. Higgins Co. v. Higgins Soap Co., 39 N.E. 490, 491 (N.Y. 1895))).

Similarly, courts have applied the likelihood of consumer confusion standard to UDTPA claims in the trademark context. See Djarum v. Dhanraj Imps., Inc., 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012) ("Courts have determined that '[the UDTPA] prohibits the same type of activity that the Lanham Act prohibits' because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." (first quoting Universal Furniture Int'l, Inc. v. Collezione Eur. USA, Inc., No. 1:04CV977, 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007); then citing Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779, 785 (E.D.N.C. 2004))).

Accordingly, the court will limit its analysis below to the question of whether Plaintiff has plausibly alleged a likelihood of consumer confusion.[3]

---

[3] While Plaintiff does not appear to directly dispute that its state law claims are governed by "likelihood of consumer confusion" analysis, or to directly urge that another test should apply, Plaintiff does cite in passing to SCI N.C. Funeral Services, LLC v. McEwen Ellington Funeral Services, Inc., No. 13 CVS 558, 2013 WL 785036 (N.C. Super. Ct. Mar. 1, 2013), a state court decision "applying a fraudulent intent standard to a North Carolina common law unfair competition claim rather than the likelihood of confusion test." (Doc. 18 at 24.) To the extent that Plaintiff's limited reference could be construed as an argument that the court should apply a fraudulent intent standard to one or more of Plaintiff's state law claims, such an argument derives little support from McEwen. In McEwen, which was a "case concern[ing] the use of a surname," the state court specifically noted the existence of "a separate

**B. Likelihood of Consumer Confusion**

The court's inquiry into the likelihood of consumer confusion is a factual one. See, e.g., Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992) ("[T]he likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." (quoting Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1356 n.5 (9th Cir. 1985))); Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:67 (5th ed. 2018) ("At the trial level, likelihood of confusion is an issue of fact."). As a result, in the mine run of cases, a complaint will not be dismissed pursuant to Rule 12(b)(6) on the basis of an insufficient likelihood of confusion. See Gov't Emps. Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 704 (E.D. Va. 2004) ("Whether defendants' uses are legitimate fair uses of the trademarks in competition, and whether they create a likelihood of confusion, are fact-specific issues

---

[fraudulent intent] standard for surname cases," given that surnames normally "cannot be trademarked," as opposed to the "confusion standard" applied in prior North Carolina cases "concern[ing] the protection of trademarks." 2013 WL 785036, at *7 (emphasis omitted). At any rate, even if some other standard could arguably apply to one or more of Plaintiff's state law claims, see generally id. at *8 ("Within the last one-hundred-and-fifteen years there has been very little case law discussing the status of North Carolina's common law as it applies to trademarks . . . ."), the court notes again that Defendants' sole argument on this motion to dismiss is that Plaintiff has not plausibly alleged a likelihood of consumer confusion. Because the court finds that Plaintiff has met its pleading obligation, Defendants' motion to dismiss would be denied on that basis regardless.

8

not properly resolved through a motion to dismiss."). Nevertheless, since trademark infringement plaintiffs are not exempted from standard plausibility pleading requirements, "there may be 'unusual' cases in which it is clear from the complaint that the parties' goods or services are totally unrelated as a matter of law" — and that the likelihood of confusion is otherwise insufficiently pleaded — and in which the complaint may be properly dismissed on a Rule 12(b)(6) motion. Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc., No. 7:10CV466, 2011 WL 926862, at *8 (W.D. Va. Mar. 15, 2011) (quoting MCW, Inc. v. Badbusinessbureau.com, L.L.C., No. 3:02-CV-2727-G, 2004 WL 833595, at *15 (N.D. Tex. April 19, 2004)); accord Murray v. Cable Nat'l Broad. Co., 86 F.3d 858, 860 (9th Cir. 1996) ("If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed.").

The Fourth Circuit has set out nine factors for courts to consider in the likelihood of consumer confusion inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009). These factors are "only a guide" in the likelihood of confusion analysis — they are "not all . . . of equal importance, nor are they always relevant in any given case." Anheuser-Busch, 962 F.2d at 320. In conducting the likelihood of confusion analysis, courts are always to keep in mind the ultimate question: whether "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004).

### 1. Strength or Distinctiveness of Plaintiff's Mark

With these principles in mind, the court turns to the "first and paramount factor": the strength or distinctiveness of Plaintiff's mark. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); see also George, 575 F.3d at 393 ("Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark."). A mark's "[s]trength consists of both conceptual strength and commercial strength." George, 575 F.3d at 393.

Conceptual strength, which concerns "the linguistic or graphical 'peculiarity' of the mark," CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006) (quoting Perini Corp. v. Perini Constr., 915 F.2d 121, 124 (4th Cir. 1990)), is evaluated partially on the basis of the following (ascending)

classes of distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." George, 575 F.3d at 394. The more a mark merely describes a product, the less conceptual strength it has; the more a mark "requires some operation of the imagination" to link it with a product, the more conceptual strength it has. Pizzeria Uno, 747 F.2d at 1528 (quoting Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366, 379 (7th Cir. 1976)). Also relevant to the conceptual strength inquiry is "the frequency of prior use of the word in other marks, particularly in the same field of merchandise or service." Id. at 1530–31.

Here, the court finds that "ClearDefense" falls within the "suggestive" class of marks. Since Plaintiff's products protect glass, the term "ClearDefense" hints at the products' usage in a manner that is not totally arbitrary, yet does not provide enough information for a consumer to deduce the nature of the products from the mark alone.[4] As far as frequency of prior usage, Defendants have attached exhibits to their briefing showing two third-party trademark registrations and one third-party trademark

---

[4] In comparison to examples discussed by the Fourth Circuit, "ClearDefense" is most analogous to suggestive marks like "Coppertone®" and "Orange Crush®," rather than either (1) arbitrary marks like "Camel® cigarettes" and "Apple® computers," or (2) descriptive marks like "After Tan post-tanning lotion" and "5 Minute glue." George, 575 F.3d at 394 (citations omitted).

application for the mark "CLEAR DEFENSE."[5] (Docs. 17-4, 17-5, 17-23.) Although these exhibits may show that the mark "CLEAR DEFENSE" is not unheard-of outside of Plaintiff's usage, they provide little information about the frequency or extent of the mark's actual usage in commerce. This is especially true where one of the third-party registrations was canceled a half-decade ago (Doc. 18-1), where Defendants' own exhibit shows that the third-party application was denied registration "because the specimen does not show the applied-for mark in use in commerce" (Doc. 17-23), and where it is unclear whether any of these third-party marks have been or are being used "in the same field of merchandise or service,"[6] Pizzeria Uno, 747 F.2d at 1531. As a

---

[5] Defendants also suggest that the substantial number of other trademarks including either the word "Clear" or the word "Defense" militates against a finding of conceptual strength for "ClearDefense." (Doc. 17 at 25–26; Doc. 17-8.) At this early stage of the litigation, the court finds the evidentiary weight of marks including only a portion of Plaintiff's mark to be too uncertain to support a finding of insufficient likelihood of confusion as a matter of law. Compare Facebook, Inc. v. Teachbook.com LLC, 819 F. Supp. 2d 764, 771–73 (N.D. Ill. 2011) (declining, on a motion to dismiss, to consider USPTO records of other marks including only a portion of the plaintiff's mark, because "the evidentiary value" of such marks was "subject to 'reasonable dispute'" (quoting Fed. R. Evid. 201(b))), with CareFirst, 434 F.3d at 270 (citing, at the summary judgment stage, third-party usage of marks including only a portion of the plaintiff's mark, along with third-party usage of marks including the entirety of the plaintiff's mark, as evidence of a lack of conceptual strength).

[6] The closest registered third-party usage of "CLEAR DEFENSE" to Plaintiff's usage appears to be for a "mold resistant coating for use on residential, commercial and industrial exterior and interior surfaces." (Doc. 17-5.) Defendants do not currently argue that this usage is "in the same field of merchandise or service" as Plaintiff's usage, and the court declines on such an undeveloped record to hold forth

12

result, the court cannot say at this stage that Plaintiff's mark lacks conceptual strength.

Commercial strength, meanwhile, concerns whether "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." CareFirst, 434 F.3d at 269 (quoting Perini, 915 F.2d at 125). Commercial strength is normally evaluated on the basis of its own list of factors: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (quoting Perini, 915 F.2d at 125). However, Defendants do not presently provide any arguments relating to the commercial strength of Plaintiff's mark other than the same third-party usage arguments addressed in the conceptual strength analysis above. (Doc. 17 at 26.) Plaintiff has averred facts pertaining to the mark's commercial strength. (Doc. 13 ¶ 20.) The court therefore finds that commercial strength has been plausibly alleged. In sum, the first factor currently favors Plaintiff.

---

on the place of Plaintiff's glass-laminate products within a broader market or field.

## 2.  Similarity of the Two Marks to Consumers

Defendants' sole argument on this factor is that their inclusion of the words "PEST CONTROL" as a modifier to any of their variations of "CLEARDEFENSE" is sufficient to "eliminat[e] any risk of confusion" regarding the two marks.  (Doc. 17 at 26–27.)  Plaintiff responds that the "CLEARDEFENSE" portion of Defendants' mark is the "dominant or critical term," Pizzeria Uno, 747 F.2d at 1530, and that therefore the two marks have a "high degree of similarity" overall.  (Doc. 18 at 12–13.)

In considering the similarity of two marks, rather than "indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers," courts are to "look to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." CareFirst, 434 F.3d at 267 (internal quotation marks omitted).  It is true that "[i]f one of two similar marks is commonly paired with other material, that pairing will serve to lessen any confusion that might otherwise be caused by the textual similarity between the two marks." Id. at 271.  Nevertheless, the Fourth Circuit "has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." Lone Star, 43 F.3d at 936; see also Pizzeria Uno, 747 F.2d at 1529–30 (noting that disclaimed portions of a composite mark are less important to

the similarity analysis than any "word[s] not disclaimed," especially "when the disclaimed word[s are] set forth in considerably smaller letters than the dominant word[s]").

Here, the "CLEARDEFENSE" portion of Defendants' mark is identical to Plaintiff's mark. Although Defendants are correct to point out that the phrase "Pest Control," used as a modifier, "lessen[s]" the overall similarity between the two marks,[7] CareFirst, 43 F.3d at 271, Defendants' own exhibit reveals that they have disclaimed the words "Pest Control" in their mark (Doc. 17-1 at 1). Further, the term "CLEARDEFENSE" (or a variant of it) is often — if not predominantly — represented in bigger text and/or in distinctive coloring as compared to "Pest Control" or other surrounding text in Defendants' usage. (Doc. 13-1.) As a result, the "CLEARDEFENSE" portion of the mark can be considered the "dominant or salient" portion and accorded "greater weight" in the similarity analysis. Lone Star, 43 F.3d at 936 ("[The defendant's] coupons and advertisements also show 'Lone Star' in larger lettering than the word 'Grill,' further reinforcing the dominance of the mark 'Lone Star.'"); Pizzeria Uno, 747 F.2d at 1529–30.

To support their argument that the modifier "Pest Control" sufficiently distinguishes their mark from Plaintiff's, Defendants

---

[7] While it is enough that a mark is "commonly paired" with other material for the likelihood of confusion to be reduced, CareFirst, 43 F.3d at 271 (emphasis added), the court notes that Defendants sometimes use the mark "Clear Defense" without the "Pest Control" modifier. (Doc. 13-1 at 9.)

cite CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263 (4th
Cir. 2006), where the Fourth Circuit found insufficient similarity
between two marks because the similar portion of the two marks was
accompanied in one party's usage by other, dissimilar material.
See id. at 271–72.  However, there are numerous distinctions
between CareFirst and the instant case.  First, unlike in the
instant case, the similar portions of the marks in CareFirst were
not identical: the plaintiff's mark was "CareFirst" and the
defendant's mark was "First Care."  Id.  Second, and perhaps more
importantly, the additional material the plaintiff paired with its
"CareFirst" mark — "BlueCross BlueShield" — had significant
independent strength.  Id. at 271 & n.5.  In the instant case, the
additional material Defendants pair with their "CLEARDEFENSE" mark
— "Pest Control" — has little if any independent strength, since
it merely describes the services Defendants offer.  See Pizzeria
Uno, 747 F.2d at 1528 ("[A] mark which is merely descriptive is
considered to be weak." (quoting Del Labs., Inc. v. Alleghany
Pharmacal Corp., 516 F. Supp. 777, 780 (S.D.N.Y. 1981))).  Third,
and finally, "CareFirst was decided on a full factual record on
summary judgment," Rebel Debutante LLC v. Forsythe Cosmetic Grp.,
Ltd., 799 F. Supp. 2d 558, 572 (M.D.N.C. 2011), whereas in the
instant case discovery has not even begun.

     As the dominant portion of Defendants' mark is identical to
Plaintiff's mark, this factor currently favors Plaintiff.

16

### 3.  Similarity of Goods or Services

Defendants place great stock in this factor, arguing that their pest control services are so "unrelated as a matter of law" to Plaintiff's glass-laminate goods that the complaint should be dismissed on this basis alone.  (Doc. 17 at 27–29.)  Plaintiff responds first that a Rule 12(b)(6) motion is not the proper context for a comparison of the parties' goods and services, second that the amended complaint plausibly alleges similarity of the parties' goods and services, and third that even a finding of dissimilarity would not be sufficient on its own to warrant dismissal at this stage.  (Doc. 18 at 16–19.)

The analysis on this factor proceeds not merely as to whether the parties' goods or services have "inherent common qualit[ies]" or "necessarily [have] any physical relationship," but more broadly as to whether "buyers are likely to believe that such goods, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."  McCarthy, <u>supra</u>, § 24:24; <u>accord</u> <u>Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd.</u>, 393 F.3d 1238, 1244 (Fed. Cir. 2004) ("[G]oods that are neither used together nor related to one another in kind may still be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis." (internal quotation marks omitted)).  It follows that "the goods [or services] in question need not be

identical or in direct competition with each other," George, 575 F.3d at 397. Instead,

> [i]t is sufficient that the respective goods of the parties are related in some manner, and/or that the conditions and activities surrounding the marketing of the goods are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source.

Kohler Co. v. Baldwin Hardware Corp., 82 U.S.P.Q.2d 1100, 1109 (T.T.A.B. 2007). As a result, it is also "relevant to consider the degree of overlap of consumers exposed to the respective services," In re Shell Oil Co., 992 F.2d 1204, 1207 (Fed. Cir. 1993), as well as the degree of similarity of the "marks [that] are involved," since — as these increase — "the degree of similarity between the parties' goods that is required to support a finding of likelihood of confusion declines." Kohler, 82 U.S.P.Q.2d at 1110. Nevertheless, some courts have opined that "[i]f the goods are totally unrelated, there can be no infringement because confusion is unlikely." See, e.g., AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Here, Defendants' pest control services bear little inherent similarity to Plaintiff's glass-laminate products. Although Plaintiff argues that "both [Plaintiff's] products and Defendants'

18

services involve the application of products to and connecting to windows" (Doc. 18 at 19), this is a relatively weak comparison due to its high degree of generality. Nevertheless, the parties' geographical closeness and their partially coterminous target markets lead the court to find that Plaintiff has plausibly alleged an "overlap of consumers exposed to the [parties'] respective [goods and] services," Shell Oil, 992 F.2d at 1207. (Doc. 15 ¶¶ 45, 53.) Further, the importance of the similarity-of-goods factor has an inverse relationship to the similarity-of-marks factor, Kohler, 82 U.S.P.Q.2d at 1110, and the court has found that the dominant portion of Defendants' mark is very similar to Plaintiff's. As a result, although the court finds that this factor currently favors Defendants due to the relative lack of inherent similarity between the parties' goods and services, this is not one of those "extreme trademark infringement cases" where it may be conclusively recognized on the pleadings alone that the parties' goods and services "are unrelated as a matter of law."[8]

---

[8] Defendants cite three cases to exemplify how "courts have ordered dismissal under Rule 12(b)(6)" when "significant differences exist between the parties' goods and services": (1) Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 564 F. Supp. 2d 544 (E.D. Va. 2008), (2) MCW, Inc. v. Badbusinessbureau.com, L.L.C., No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. April 19, 2004), and (3) Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788 (9th Cir. 1981). (Doc. 17 at 27.) Each of these cases is distinguishable from the present one. In Nemet Chevrolet, the plaintiffs failed to even "alleg[e the] infringement of a trademark," much less facts relating to the similarity of the parties' goods or services. 564 F. Supp. 2d at 554. In the instant case, Plaintiff has clearly alleged trademark infringement, as well as a variety of facts pertaining to such a claim. In MCW, the dissimilarity of the parties'

<u>Hensley Mfg. v. ProPride, Inc.</u>, 579 F.3d 603, 613 (6th Cir. 2009)

(internal quotation marks omitted); <u>see</u> <u>Hokie Real Estate</u>, 2011 WL

926862, at *8 (noting that, "[w]hile the defendant's arguments

regarding the dissimilarities between the parties' services may

find success on a motion for summary judgment or at trial, the

court ultimately agrees with [the plaintiff] that a Rule 12(b)(6)

motion is not the appropriate vehicle" for final resolution — based

solely on dissimilarity of services — of the plaintiff's claims

(footnote omitted)).

### 4. Similarity of Facilities

Defendants argue that Plaintiff fails to plead any facts

supporting the similarity of the parties' facilities (Doc. 17 at

29), and Plaintiff has not contested this argument. As a result,

for purposes of this motion, the court will treat this factor as

conceded to Defendants.

### 5. Similarity of Advertising

Defendants argue that their advertising is dissimilar to

Plaintiff's because it clearly refers to "Pest Control." (Doc. 17

---

goods or services was only one observation that played into the court's
overall calculus that the plaintiff failed to state a claim under the
Lanham Act, with the court's "[m]ost important[]" observation being that
no "reasonable viewer of the defendants' website would believe that the
<u>disparaging comments</u> regarding [the plaintiff's] business are endorsed
by [the plaintiff]." 2004 WL 833595, at *16 (emphasis added). In <u>Toho</u>,
similarly, the Ninth Circuit affirmed a Rule 12(b)(6) dismissal in part
because "[t]he [parties'] goods [we]re unrelated as a matter of law,"
but also because of a variety of other factors such as the dissimilarity
of the parties' marketing and the differing appearances of the relevant
marks and product labeling. 645 F.2d at 790.

at 30.)  Plaintiff argues that the parties' methods of advertising are similar — both parties "advertise on the internet and put their marks on their respective company vans."  (Doc. 18 at 13–14.)

The Fourth Circuit has articulated at least four sub-factors applicable to the similarity of advertising analysis: "[1] the media used, [2] the geographic areas in which advertising occurs, [3] the appearance of the advertisements, and [4] the content of the advertisements."  CareFirst, 434 F.3d at 273.

As to the types of media used, the court is unconvinced that the mere fact that both parties advertise their services on their respective websites plays significantly into the likelihood of confusion analysis.  In the digital age, companies commonly have an online presence of some kind, and it is highly questionable whether the simple maintenance of a company webpage — which is the only type of online activity by Defendants that Plaintiff cites (see Doc. 13-1) — constitutes "advertising" in a meaningful sense. See Swatch, S.A. v. Beehive Wholesale, L.L.C., 888 F. Supp. 2d 738, 753–54 (E.D. Va. 2012) ("The sole overlap in the Parties' advertising is their use of the internet, in particular their internet stores.  But that is no overlap at all. . . . The parties simply maintain stores on their corporate websites where individuals can purchase their products.  When taken alone, however, internet stores are no more of an advertisement than a brick and mortar store front."), aff'd, 739 F.3d 150 (4th Cir.

2014); *see also* <u>Rebel Debutante</u>, 799 F. Supp. 2d at 574 ("That both [parties] employ the Internet to market their products, as do probably the majority of sellers today, does not resolve whether the products are targeted to the same market.").

The fact that both parties advertise their goods or services on white company vans is, however, at least some evidence of similarity in advertising "media." By definition, the plausibility standard does not require a plaintiff to ensure that every sub-factor of every factor in the nine-factor Lanham Act test is convincingly shown at the pleading stage. <u>See Hokie Real Estate</u>, 2011 WL 926862, at *8. Together, the use of similar vehicles, the fact that the parties allegedly operate their vans in at least a partially overlapping geographic area (Doc. 13 ¶ 53), and the fact that the mark "CLEARDEFENSE" (or a close variant) is the most prominent advertising feature on both parties' vans (<u>id.</u> ¶¶ 21, 28), lead the court to find that Plaintiff has plausibly alleged similarity of advertising. At this early stage, this factor favors Plaintiff slightly.

### 6. Defendants' Intent

Plaintiff argues that, taken together, the alleged facts that (1) Defendants knew of Plaintiff's mark before adopting their own, (2) Defendants communicated to Plaintiff their understanding that there was an "issue" relating to "similar marks," and (3) Defendants nevertheless adopted a similar mark, shows intent to

confue consumers.[9]  (See Doc. 18 at 16; see also Doc. 13 ¶ 50.)
Defendants argue that a pest control services company would not
stand to gain any conceivable benefit by an association with a
window-laminate products company, and that any allegation of bad
intent is therefore implausible.  (See Doc. 17 at 30–31.)

If a plaintiff shows "intent to confuse the buying public" on
the part of a defendant, "this is strong evidence establishing
likelihood of confusion, since one intending to profit from
another's reputation generally attempts to make his signs,
advertisements, etc., to resemble the other's so as deliberately
to induce confusion."  Pizzeria Uno, 747 F.2d at 1535.  Lack of
such intent to confuse on the part of a defendant, however, "is no
defense if a court finds actual or likelihood of confusion" based
on other factors.  Id.

Here, it is certainly relevant to the intent-to-confuse
inquiry whether Defendants knew of Plaintiff's mark before
adopting their own mark, and whether they recognized the similarity
of the two marks.  Both of these have been alleged.[10]  (Doc. 13

---

[9] Plaintiff also argues that Defendants' expansion to the Greensboro
area, where Plaintiff is based, is evidence of intent to infringe.  (Doc.
18 at 16.)  To draw such an inference on the facts alleged at this early
stage seeks too much.  Defendants apparently started in the Raleigh-
Durham area in 2013 (Doc. 17 at 31) and have steadily expanded to numerous
other cities across North Carolina, South Carolina, Tennessee, Virginia,
Missouri, and Ohio in the years since, see CLEARDEFENSE PEST CONTROL,
https://www.cleardefensepest.com/ (last visited Oct. 22, 2018).

[10] Defendants make note of the fact that Plaintiff's allegation of
Defendants' prior knowledge of Plaintiff's mark is made only "[u]pon

¶ 50.) However, these considerations are not by themselves strong evidence of intent to confuse, since Defendants may have genuinely believed that differences in the parties' goods or services, or differences in the mark's use (i.e., the addition of the words "Pest Control") were sufficient to head off any consumer confusion that might otherwise stem from the similarity of the marks. At this early stage, then, Defendants' intent does not appear to be the "major factor" it can "sometimes" be in trademark infringement cases, <u>Pizzeria Uno</u>, 747 F.2d at 1535, but weakly favors Plaintiff.

### 7. Actual Confusion

Plaintiff alleges a variety of incidents showing confusion, including most notably: (1) materials intended for Defendants but delivered to Plaintiff, (2) actual or potential customers of Plaintiff communicating a belief to Plaintiff that there was some connection between Plaintiff and Defendants, (3) actual or potential customers of Defendants contacting Plaintiff for pest control services or otherwise communicating a belief to Plaintiff

---

information and belief." (Doc. 17 at 30; Doc. 13 ¶ 50.) But whereas making an allegation "'upon information and belief' is . . . an inadequate substitute for providing detail[ed]" allegations in general, "information and belief" allegations may be "proper . . . where a plaintiff does not have personal knowledge of the facts being asserted, and is disclosing that state of knowledge" pursuant to the federal rules, here Federal Rule of Civil Procedure 11(b)(3). <u>In re Lilley</u>, No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bankr. M.D.N.C. April 13, 2011). This latter type of "information and belief" allegation is clearly permissible when the relevant "facts are peculiarly within the possession and control of the defendant." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).

that there was some connection between Plaintiff and Defendants, (4) reviews for Defendants' services on a Yelp page for a former licensee of Plaintiff's mark, and (5) a job applicant for Plaintiff mistakenly appearing at the wrong location. (Doc. 13 ¶ 41.) Defendants argue that many or all of these incidents are not the sort of confusion that trademark law is intended to protect against, and therefore should not be considered. (Doc. 17 at 10–11, 22–23.)

"[E]vidence of actual confusion is often paramount in the likelihood of confusion analysis." George, 575 F.3d at 393 (internal quotation marks omitted); accord Lone Star, 43 F.3d at 937 ("[E]vidence [of actual confusion] is entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion.").[11] Nevertheless, the Fourth Circuit "has emphasized that a trademark owner need not demonstrate actual confusion" in order to succeed on a trademark infringement claim. Lone Star, 43 F.3d at 933. The type of confusion relevant to this factor — as to the likelihood of confusion analysis as a whole — is confusion "among consumers regarding the source or sponsorship of the goods or services." Radiance Found., Inc. v. N.A.A.C.P., 786 F.3d 316, 324 (4th Cir. 2015) (emphasis added) (also noting that "it is important to remember that trademark infringement

---

[11] However, "[e]vidence of only a small number of instances of actual confusion may be dismissed as _de minimis_." George, 575 F.3d at 398.

protects only against mistaken purchasing decisions and not against confusion generally" (internal quotation marks omitted)). While this inquiry is often phrased as focused on confusion as to "the origin of the goods or services in question," <u>KP Permanent Make-Up</u>, 543 U.S. at 117, courts have consistently held that "[t]he confusion that is remedied by trademark and unfair competition law is confusion not only as to source, but also as to affiliation, connection or sponsorship," <u>Rosetta Stone</u>, 676 F.3d at 157 (quoting McCarthy, <u>supra</u>, § 23:8). These latter types of confusion are especially relevant where the goods and services in question are not in competition with each other. McCarthy, <u>supra</u>, § 24:3 ("The nature of the buyer's confusion in seeing similar marks on noncompetitive, but related goods, is a confusion as to sponsorship, affiliation or connection.").

While the court agrees with Defendants that some of the confusion alleged in the amended complaint — for instance, mistaken deliveries and disoriented job seekers — is irrelevant to the trademark infringement analysis, the court finds that Plaintiff has otherwise plausibly alleged confusion "among consumers" of both parties' goods or services regarding a possible affiliation, connection, or sponsorship between the parties. (<u>See, e.g.</u>, Doc. 13 ¶ 41(b), (c), (g), (h).) Whether or not Plaintiff may ultimately succeed at proving such actual confusion, and whether such actual confusion combined with other evidence will suffice to

carry the day for Plaintiff at summary judgment or trial, remains to be seen. At present, however, this factor favors Plaintiff.

### 8. Quality of Defendants' Product

"This factor is typically important in cases involving cheap copies and 'knockoffs' of a competitor's trademark-protected goods." Rebel Debutante, 799 F. Supp. 2d at 578 (quoting Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 467 (4th Cir. 1996)). The instant case does not involve products in competition with each other, much less cheap copies or knockoffs. The court therefore finds this factor irrelevant to its trademark infringement analysis and does not count it in favor of either party. See BNC BanCorp v. BNCCORP, INC., No. 1:15-cv-793, 2016 WL 3365428, at *6 (M.D.N.C. June 16, 2016) (declining to consider the eighth factor in a case not involving cheap copies or knockoffs); see also Anheuser-Busch, 962 F.2d at 320 ("[N]ot all of the factors . . . [are] always relevant in any given case.").

### 9. Sophistication of the Consuming Public

"Barring an unusual case, buyer sophistication will only be a key factor when the relevant market is not the public at-large." Sara Lee, 81 F.3d at 467. Here, the parties do not appear to allege or argue that consumers of glass laminates or pest control services are part of an especially sophisticated or otherwise niche market. The court similarly finds this factor irrelevant and does not count it in favor of either party. See BNC BanCorp, 2016 WL

27

3365428, at *6 (declining to consider the ninth factor in a case not involving a specialty market).

*     *     *

In sum, Plaintiff has plausibly alleged — at varying levels of strength — facts lending at least some support to five of the relevant seven likelihood of confusion factors.  As a result, "the court is unable to conclude that the circumstances of the instant case fall within th[e] category" of those "unusual cases in which it is clear from the complaint" that Plaintiff's trademark infringement and unfair competition claims should be dismissed. Hokie Real Estate, 2011 WL 926862, at *8 (internal quotation marks omitted); see also Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006) ("[T]here is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue.").  Plaintiff's claims — hinging as they do on what the Fourth Circuit has "consistently held" to be "an inherently factual determination," Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 171 n.3 (4th Cir. 2005) (citing Anheuser-Busch, 962 F.2d at 318) — are not so implausibly pleaded that they should be dismissed without allowing Plaintiff a chance to prove the relevant facts.  See Hokie Real Estate, 2011 WL 926862, at *8 ("While [the plaintiff] may not ultimately prevail on this issue, the court is convinced that [the plaintiff] is entitled to offer evidence to support [its claim]." (third alteration in original)

(internal quotation marks omitted)).

### C. Counts Five and Six

Defendants also move to dismiss Counts Five and Six of the amended complaint, which seek "an accounting" and "cancellation of [Defendants'] Registration," respectively. (Doc. 13 ¶¶ 93–98.) Defendants contend that these are remedies for trademark infringement and fail to state free-standing claims for relief. Plaintiff has not responded to this contention. The court agrees with Defendants. See Microsoft Corp. v. #9 Software, Inc., No. 405CV106, 2005 WL 3447965, at *5 (E.D. Va. Dec. 15, 2005) ("[A]n accounting may serve as a remedy under [the Lanham Act], but not a separate cause of action."); Protect-A-Car Wash Sys., Inc. v. Car Wash Partners, Inc., 276 F. Supp. 3d 439, 456 (D. Md. 2017) (finding that cancellation of a registration is "a remedy for trademark infringement rather than an independent basis for federal jurisdiction" (quoting Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 599 (9th Cir. 2014))). Therefore, Counts Five and Six will be dismissed, and to the extent Plaintiff requests those same remedies in the prayer for relief (Doc. 13 at 26–27), those requests will be treated along with Plaintiff's other requested remedies at the appropriate stage in the litigation.

## II. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 16) is GRANTED IN PART AND DENIED IN PART as follows: Counts Five and Six of Plaintiff's amended complaint (Doc. 13), to the extent they purport to maintain a cause of action for an accounting and cancellation of registration, respectively, are DISMISSED as such, provided that to the extent Plaintiff requests those same remedies in the prayer for relief, those requests will be treated along with Plaintiff's other requested remedies at the appropriate stage of the litigation; otherwise, the motion to dismiss is DENIED.

                                                 /s/   Thomas D. Schroeder
                                               United States District Judge

October 23, 2018